May it please the Court, I'm Jay Lansing from Billings, Montana, and I'm appearing for Ryan Cislo, and I'd like to reserve two minutes for rebuttal if I could. One of the critical issues that we raised in our brief was the issue concerning Mr. Cislo's reasonable expectation of privacy. And in our brief, what we did is we set forth the fact that the government had stipulated basically with the defendant in saying that Mr. Cislo had a reasonable expectation of privacy in the bedroom of his home that he was sharing with his girlfriend and his girlfriend's mother. At the evidentiary hearing that we had prior to the hearing being conducted, one of the things I did was I reconfirmed that position of the United States that they had stipulated to Mr. Cislo's reasonable expectation of privacy, and that was again confirmed. It was also confirmed for the co-defendant, Ms. Brown. And we proceeded from that point forward. Unfortunately... Let me ask you this. Obviously the district judge disregards the stipulation, which the district judge under certain circumstances is free to do. Had you known during the hearing that the district judge was inclined to or was tempted to disregard the stipulation, and you were therefore going to have to put on proof with respect to expectation of privacy, what would you have done? Well, there was a couple of different things, Judge. I would tell you that obviously there was evidence as far as what things were found in the room that connected Mr. Cislo to the room. There was male clothing in the room. There was his wallet that was found in the room. There was those types of things. I know that during one of the phone calls, and I realize there was discrepancies during the phone calls that Mr. Cislo made from the jail, but there was also a phone call that he made, I want to say to his mother, in which he said that he had been staying there for approximately ten nights in the home of Ms. Johnson. I would have also brought up the whole idea that because of the fact that even if we assume that Ms. Johnson had supposedly kicked out Mr. Cislo, that did not come out on direct examination or cross-examination by the government. That was actually a fact that came up during the cross-examination of one of the government's attorneys by the counsel for the co-defendant, Ms. Brown. Well, it comes out in Peck's testimony, and it comes out as hearsay. Peck says, Johnson told me that she kicked him out. Correct. Well, that's hearsay, and would you have said that's not true? Would you have said she didn't kick him out? I would have said, Judge, that if she had, obviously Mr. Cislo was not aware of that fact. Did you have available to you evidence that you could have put on that would have contradicted? If Mr. Cislo was not aware of that fact, would you have put Cislo on the stand to say that? I suppose I could have, Judge. Obviously, any time you're going to put the defendant on the stand, you always think long and hard about doing that. There's some risks. Yeah, yeah. Did you have other evidence that you could have used, rather than to say, well, it's kind of improbable, or, you know, there's wallets there. If he's been kicked out, why is those wallets still there? Judge, I believe I would have had sufficient evidence to establish his standing. I don't think that this was not a situation in... You might have impeached the clerent. Maybe. The mother-in-law. Right. You might have impeached her. I take it we're presuming the evidence was admissible because it was a preliminary hearing, so the fact that it's hearsay does make it inadmissible, right? Well, and that comes back to the issue that we... And so if it comes in, then you're entitled to impeach the declarent. I would think so, Judge. I mean, I realize that there are times when attorneys enter into stipulations, and I'm sure that sometimes they may be stretches of the facts. Sometimes that comes up in these sexual, or excuse me, in these sentencing guideline issues that you've seen, and where the parties agree that the quantity is a certain amount. But that is not this case. But after the district court issued the order on the suppression, did you ask the court to reconsider or ask for the opportunity to present further evidence at that point, given the surprise inherent in that order? I did not do that, Judge. And I was thinking of that when I was getting ready for my argument, and I thought, obviously, maybe I should have done that, because now I'm asking you to help me do that. So there we are. But I think the thing is, I would think that all attorneys understand that the judge is not bound by that stipulation. I mean, obviously, the judge can reject that stipulation, but it's the timing and what we were left in the position of after that. So let's get to the next step. Let's say we agree with you that there was error here. What follows from that? Then, Judge, I think that you've reversed the decision of Judge Waters concerning the motion to suppress. I think you also have to then— Where have your judgments? I'm sorry? Where have your judgments? Well, and I think— So what exactly happens at that point? You'd have to show—assuming we agree with you it's error, you have to show it's prejudicial error, right? I mean, just take me through the process. Well, I think that— What are you asking for? I'm asking for the Court to reverse the decision of Judge Waters, remand the case back for another hearing at which we can address the issue of standing and re-decide the issues concerning the suppression of the three firearms that were seized from the bedroom of Mr. Sislo. Do we set aside the conviction? I think it's the question. Yes, Judge. Because the conviction really is dependent upon a jury verdict. The jury verdict was based in part upon the finding of the weapon. Do we set aside the conviction because the weapon was critical evidence such that we have to reverse the conviction? Yes, Judge. Yeah, yeah. I think that's what you're after, right? Yes, Judge. Yeah, yeah. And, of course, that brings us to the next question. Keep walking me through the process. So we set aside the conviction according to you. We send it back. You claim for a hearing. Careful what you wish for. You see a trap, right? I'm not trying to set a trap for you. And let's say Judge Waters hears your evidence and comes to the same conclusion. What happens next? Well, I think there's also the related issue, Judge, of the hearsay that was presented. I understand the related issues. That's why I'm asking the question. Well, I'm asking what you want us to do. I mean, you're asking relief from this Court. So I'd like to know what it is you envision. Let's say we've gotten past the point. Let's say we were to agree with you. I'm not saying we will, but I'm just saying let's say we do. Walk me through the process. We reverse. We send it back. We vacate the conviction. We send it back for a hearing. And let's say the next thing that happens is the district judge comes to the same conclusion. Does the district judge reinstate the verdict? What happens to that point? Judge, I would, again, if all I had raised was just that issue, Judge, I might sit there and say remand it back.  I'm asking what you want to have happen next. Just give me your answer. I don't need a psychoanalysis. I don't need to know what's going on through your head. Just ask me what happens next. You get a new trial before a new... Do you think the judgment should be reversed and the judgment vacated on the basis of insufficient evidence? No. We're at the point where you're back in district court. You've had a hearing, and the district judge has heard the evidence and come to the same conclusion about...as she did before. So what happens to that point? Do you have a new trial? Do you reinstate the jury verdict? Does she get a... What happens? I'm just wondering. I mean, you must have thought about this, right? You needed me here, and you'd be asked this question, right? What are you asking us to do? So if it's...if the only issue that you decide is simply the stipulation issue and nothing else, then I suspect that all you can do is remand the case back for Judge Waters to determine whether or not my client has standing and whether or not his constitutional rights were violated or not. So bring in your other issues and tell me how these things interplay. I'm sorry? I'm sorry? So bring in your other issues. What...what...what do you want? Well, when we talk about the hearsay at the suppression hearing, that was a major part of the determination of whether or not it was a lawful or unlawful search. We believe that the hearsay evidence that was presented at the suppression hearing should not have been admitted if we follow Rule 1101 and if we follow the Brewer case. So if we're saying that that evidence does not come in, then obviously in that situation, I believe the judgment should be vacated, reversed, and sent back for a new trial. If we also consider the issue... for setting aside the conviction for lack of evidence, in which case there would be no new trial, right? Well... Because the... The thing is, Judge, is Judge Waters, though, never got to the merits, I would tell you, Judge, of the search and seizure issue. So she never made any really findings or conclusions concerning our motion to suppress. All she got to was the issue of standing, and that became as far as she got. She got further when we talked about the co-defendant, Ms. Brown. Ms. Brown, she did get to the question of whether this was a lawful probation search, whether this was a lawful consent search. And obviously for Ms. Brown, we'd sit there and say, for the consent search, we think that that's equally applicable to us. Obviously for the probation search, we don't think that that's applicable to us. But we would still have to have a hearing to determine what is a proper search in regard to that. Do you want to argue the hearsay issue? What's your argument about the hearsay? I mean, it's a preliminary hearing, right? Why wouldn't the hearsay come in? Why doesn't the hearsay come in? Because the rules of evidence apply to suppression hearings. That's what Brewer, in essence, is saying, and that was the issue that Judge Water struggled with prior to our hearing, and that's why she actually had a second hearing at which she then allowed the agents to present hearsay evidence. And she relied at that point on the Matlock case to say she was going to allow the hearsay evidence in. Okay. You are out of time. Can I ask one more question before you sit down? Yes, sir. I think we've established that a judge can reject a stipulation of the parties, particularly on an issue of law, which is really the judge's province. Can a judge ever reject a stipulation without giving notice to the parties? Is there any law on that subject? That seems like it's probably a rare occasion where that comes up. Judge, I looked very hard to try and find a case that talked about the timing of that, and if I could have found a case, I would tell you it would have been in my brief. But it's, and I guess that's why I say it's just a matter of fundamental fairness, Judge. And in this case, there was no inclination she was going to reject the stipulation until she issued the order after the hearing was over. Is that correct? That's correct, Judge. All right. Thank you. Okay. Thank you. May it please the Court, Tim Tatarka for the United States. I think Mr. Lansing raised the critical issue here when he pointed out that it was Ms. Brown's counsel, not the government, that put at issue the fact that he, that Mr. Cicillo had been excluded from the home. Her, Ms. Brown's position was adverse to Mr. Cicillo's on that point because she wanted to be able to argue that she was not subject to a reduced expectation of privacy because the officers didn't have reason to believe that she was sharing the room with a probationer who would have been subject to a reasonable suspicion search condition. How in the world can we trust anything about Ms. Johnson in that she couldn't remember virtually anything when trial came around and she had to be shown notes that she signed earlier and all kinds of, you know, techniques to try to get her to remember what was going on. How can we trust her testimony in any respect? Well, I think we can trust her testimony, or I think the important issue with respect to the suppression issue, and this is in supplemental excerpts of the record, pages 78 and 79. She was present and available to testify at the second suppression hearing. Mr. Cicillo's counsel objected to her testimony even though the Court noted that he was giving up in doing so. He was electing not to cross-examine her on her out-of-court statements. So he had an opportunity to do so at that point. But he wanted to preserve the hearsay objection, I assume. But at that point, he knew that the hearsay was going to come in. The judge had stated that on the record. And I would also point out that at the suppression hearing, he did have an opportunity to cross-examine This is supplemental excerpts of the record, page 97. He had an opportunity to cross-examine the police officer with respect to those statements, the statements that Mr. Cicillo had been excluded from the home, the facts that fundamentally undercut his argument for standing. The police officer who took the statement? The probation officer, yes. So he was... What good would that have done? It wouldn't have impeached the credibility, memory, veracity of the declarant, right? Well, the issue, though, it isn't actually her veracity that's at issue, right? You're dealing with the question of whether the search was reasonable. The question in the Oates case goes into this. The question is whether the officers... The facts known to the officers at the time that they conducted the search. So the question wasn't whether or not Ms. Johnson was... What Ms. Johnson was saying is true in the sort of abstract sense, absolutely true. The question was whether or not the officers had... The facts known to the officers were that she excluded... Now, is that right? So let's take a case that's not quite this one, and I'm going to try to... I'm going to clarify this one artificially. The officers come to the door. The person coming to the door lies through her teeth and says, he hasn't lived here for five years, and of course they have full control over this room, and you're free to go in there. They go in there and they find something. It turns out the guy has been living there steadily. He has absolutely every expectation of privacy, and she just lied. Are you saying that the expectation of privacy is gone because she lied? I think that... And therefore, the officers are... I should say it this way, that the officers are entitled to act as if there is no expectation of privacy because she lied? If she lied convincingly, I think... I'm sorry if that's not a great answer to that question. If they really had no reason to doubt her and acted in good faith based on her statement that she had excluded, that she was the homeowner, that she excluded a former overnight guest, then they would have reason to believe that he didn't have standing. If I could bring back in some of the facts from this case, they did have more reason to believe that she... They knew that she was the owner of the trailer. They knew that Mr. Sislo had been staying there and had been staying with his girlfriend and put down that his mother-in-law was his landlord. So there was reason for them to trust her statement that she was the homeowner and was entitled to kick him out. Well, but the question is whether she had kicked him out, not whether she was entitled to do so. Well, whether the officers reasonably believed that she was entitled to kick him out. And the Oates case dealt exactly with that issue. Do we know the order in which they found things in the room? Did they find his wallet first? Because as soon as they find his wallet, they might say, wait a minute, she kicked him out and his wallet's still here? Well, I believe that it's in the trial testimony as to the order, but I do believe they found the wallet first. But I think the important thing there is that shows... That goes to the point that Mr. Sislo is sort of between a rock and a hard place here because there's only two tracks. Either he had no expectation of privacy because he had been excluded from the residence or he was an occupant of that room and he was subject to a reasonable suspicion search condition. Well, you know, I need to know a little bit more about the search condition, which the district judge doesn't get to as to him. What do we know about the condition of probation and the search that could be done? The actual wording of the search condition is at supplemental excerpts of the record, page 8. Okay. And it was that he... I don't have the exact language off the top of my head. I can look if you want. But essentially, he was subject to a reasonable search of his residence. And he had put down that address as his residence. Ms. Johnson testified, told the officers that he had been living there for about five weeks. The officers independently knew that he was staying with his girlfriend, Ms. Brown, and her mother. So that all checked out. So there was no question that absent him being kicked out, that that was his residence. And there's no question that there was reasonable suspicion to conduct a search. But it's your position that he was kicked out. And how can a probation search be valid if he was kicked out of the residence? Well, that's... I believe that's the rock and the hard place that the defense, that Mr. Sislo has to choose. If he's arguing that he had an expectation of privacy, we believe... You can't have it both ways either. If he's kicked out of the residence, then a probation search is not valid because they didn't have any reasonable suspicion. Yes, that's correct. I do think there are only two avenues here. Either he had no expectation of privacy because he was excluded from the residence, or that he was occupying that room and he was subject to a reasonable search condition. I think there are only two paths to go down. And either one leads to the search being reasonable and the district court should be affirmed. And this court can, of course, affirm on any grounds supported by the record. Can I ask you a question about the stipulation? I mean, if a stipulation does anything, it certainly lulls parties to rest on that particular issue. Done and gone. You don't have to worry about it anymore. I mean, how can it be fair to reject a stipulation for a defendant in a criminal case after the hearing is over when there's no further chance to present evidence on the issue that, in this case, is critically important? I think this would be a different case if the government had conceded that issue as a matter of law, and then the government had sort of surreptitiously elicited the evidence contrary to that holding and sort of led the judge to that question. But that is not what happened in this case. Ms. Brown had a position that fundamentally undercut Mr. Cicillo's expectation of privacy. She brought out supplemental excerpts of the record, page 90 and 91, brought out that he was kicked out and not allowed to return. That fundamentally undercut his expectation of privacy. And he was on notice at that point. He had an opportunity to cross-examine the police officer. And he had an opportunity at that hearing to cross-examine Ms. Johnson as well. Hadn't the district judge accepted the stipulation at that point? No, Your Honor. I don't believe so. There is a statement to that effect in Mr. Cicillo's opening brief. But I think if you read at supplemental excerpts of the record, pages 4 and 5, the defense counsel mentions the stipulation, raises the issue of the stipulation, and then goes on to address a separate question about handing out pieces of evidence. And the Court says, yes, that's fine. And that's the reference that he's – that he raises in the – 4 and 5? 4 and 5 of the supplemental excerpts of the record. So what's your position as to that, that the Court did not, in fact, accept the stipulation? I don't believe that that statement goes to the – that her statement addressed the stipulation at all. And? So he raises two points on page 4 of the supplemental excerpts of the records. He mentions the stipulation. What line are you reading from? So starting at line 7. Okay. He says, Judge, I have a couple matters to bring up to the Court that I've discussed with Mr. Sullivan today. The government has indicated that it would be willing to stipulate that Mr. Sislo had a reasonable expectation of privacy in the bedroom and its contents at 9 Attica. With that, we thought we would be able to shorten up the hearing a little bit this afternoon. And I also discussed with Mr. Sullivan that the government obviously had the burden of establishing the consent, and they're prepared to go forward. Last, Judge, is that I do have copies of our – at least possible exhibits that we might introduce. I have one copy for the Court, another copy for the law clerk. If I could provide those to the Court, I'm not sure if I'm going to introduce those. So if I don't, I'll retrieve them at the end of the hearing. Is that okay? The Court says that sounds fine. So you think that the Court sort of withheld notice as to whether or not – a ruling on whether or not to accept the stipulation? I think the Court was silent on the issue of the stipulation and that that sounds fine went to the question about handing out the evidence, and the Court just didn't say anything about the stipulation. And so when Ms. Brown brought those facts that fundamentally undercut Mr. Sislo's standing into issue, he had an opportunity and an obligation to respond at that time. And I think either way, he runs into the problem that he either had no expectation of privacy or he had an expectation of privacy subject to the search condition, unless the Court has any further questions. Thank you. Thanks. I think we took over your time, but we'll give you a minute for rebuttal if you want to take it. Just one thing, Judge. You know, at the beginning of the United States' response to our motion to suppress, and I'm reading here at page 17 of our opening brief, and I'm repeating what the government said at the beginning of their brief, as a threshold matter, the government agrees that Sislo had a legitimate expectation of privacy in the room where the firearms were located, albeit a significantly diminished one as discussed below. I think we know all of that. I think opposing counsel's argument is, you know, the government took that position. The Court doesn't say, I accept the stipulation. That's sort of the passage we just heard read. And then during the hearing, evidence comes in that contradicts it. So government's counsel says, well, at that point, you could have and should have presented evidence to the contrary. Well, and all I'm saying, Judge, is that at that point in time, I mean, I would think it would be very awkward for me to sit there and say, so, Judge, are you going to accept our stipulation or not? And she would probably say, I would think so, unless something. Well, who would be awkward about that? But the problem is that. What would be awkward, why? But the problem with that is, Judge, is that if she's going to do that, she needs to do that so that we get an opportunity to supplement the record. What about the argument that it doesn't matter, either way, the search is fine? Either he did have expirational privacy, I mean, either you believe the statement or you don't. I mean, if the officers heard her say that she kicked him out, then they're entitled to search because she's the landlady and whether she was telling the truth or not, it doesn't matter. Well, the thing is, is again, Judge Waters never got to the point of determining whether it was a proper probation search. She never got to that point, Judge. Let me ask you this, though, as to the probation search, if he had not been kicked out, let's just assume that he's still in that room, there's no ambiguity about it at all. Would you have any defense to the argument that this is a valid probation search? Yes, Judge. I mean, what would that defense be? Those are the, and those arguments were set forth in the two briefs that we filed at the district court level because there was a conflict as to where he was actually living at and whether or not he, and I'm talking about the probation officer, actually had proper authority to go over to this 9 Atticus Street and search that because it supposedly is where Mr. Sislo is living at. And I would tell you, I don't remember all of the factors off the top of my head for a proper probationary search at this point in time, but I would tell you, Judge, that there were concerns and challenges that we made as part of our evidentiary presentation to the court. Now, doesn't she say, he showed me three guns, I mean, she calls, she says that she called because she saw three guns, this is the mother-in-law, he is a probationer, he's not allowed to have guns, why isn't that all that's needed? Because they still have to find out where the probationer is living at, where he has... Do you have a valid defense to this being a proper probationary search? Yes, Judge. And what is that defense? And what I'm saying, Judge, is there are a number of factors that go into determining whether or not it is a proper probationary search. I got that. So, what's the defense? And all I'm saying, Judge, is I wish I could tell you every single factor off the top of my head. But I can tell you that they did not go over to his previous residence to see if he was still living there. They did not go over and check any of the, and surveil the new residence, which is required for them to determine whether or not he was living at the 9 Attica Strait, as she was claiming that he had. So, there's something in the probationary conditions that require not only that he be living there, but that they have checked elsewhere where he might have been living before there can be a valid probationary search? There's a number of requirements. It's not just that little snippet from his judgment, Judge. Okay. Thank you. Well, give me a preview. What kind of things would these be? Like I'm saying, Judge, it's off the top of my head. I want to say there's about four or five factors that we briefed and that we presented evidence about concerning whether or not it was a proper probation search. It is, and I'm just saying that, I wish I could, I can't tell you right now. She's a homeowner. She's a homeowner. She says, this guy showed me three guns. So, either he's living there or he's not living there. If he's not living there, she certainly can say, go into my, you know, place and search around. Here's the place where he showed me the guns, and I think that's still there. If he's not living there, if he has no expectation of privacy, then she's fully authorized to do that, right? There can be no objection. If he's not living there. There can be no, well, but anybody can say to the police, come in and search my house, right? I mean, she's entitled to have the police come in and search it. She says, you know, this is the place where this guy showed me the guns. It's my home. He's not living here. Come in and look, right? There can be any possible objection your client has to that search, and that search is legal because the homeowner allows it to happen. Or it is, or he is living there, in which case he has expectation of privacy. But then what's the defense? I mean, he's living there, and you have a witness who is saying, there he showed me three guns. He's not allowed to have guns. So I think opposing counsel has you, doesn't he? Judge, I would say it is not as simple as her saying, you can search my house. I mean, that's Why isn't it that simple? Because it's on that basis that the court determined that the search of the bedroom for the co-defendant, Ms. Brown, was an improper search because it was not a proper consent search. She did not have mutual use and control over that particular bedroom. I'm sorry, who was she sharing it with? Who was Ms. Brown sharing it with? Mr. Sislo. No, I'm sorry, we're not talking about Brown's consent, right? No, but what I'm saying is that when Judge Waters granted Ms. Brown's motion to suppress, it was on the basis that it was not a proper consent search. And so all I was saying was, is that it's not simply a matter of Connie Johnson owns the house. So she can consent to go wherever they want to inside that house. It is, I'm just saying, Judge, I would submit that it's not that simple. I'm afraid it is not simple because she may not have, she may have restriction as to Ms. Brown, but your client doesn't have standing to raise Brown's objections. So as to your client, if he's not living there, I just don't see what the objection would be or how he would possibly raise an objection. Ms. Brown might be able to raise an objection. She might have expectation of privacy, but it doesn't benefit your client, right? I believe he was living there, Judge. Well, so you have to go down that route. You have to go down the route he's living there. If he's living there, why isn't it a proper police, a proper patient search? If he's living there and he is, you have a witness that says I was shown guns there, why isn't that the end of it? I understand, Judge. Yeah. Okay. Well, I think we've gotten everything we can. Thank you, Judge. Our case is filed. You will stand submitted. Let's see. Next, next case on the calendar is Conti v. Corporate Services Group.
judges: Kozinski, W. Fletcher, Tunheim